**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 11-52 |
| | * | |
| **RICARDO M. YOUNG, JR.** | * | SECTION "B"(1) |

<u>**ORDER and REASONS**</u>

Before the Court is Defendant's Motion to Suppress Evidence (Rec. Doc. No. 23). The Government filed an opposition thereto. (Rec. Doc. No. 31). After evidentiary hearing and receipt of post-hearing briefs and supportive documentation filed into the record, and for the reasons pronounced below, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence (Rec. Doc. No. 23) is **DENIED without prejudice to reurge at trial**.

<u>Cause of Action and Facts of Case</u>:

On February 16, 2011, a Criminal Complaint and warrant was signed by Magistrate Judge Alma Chasez for Defendant Ricardo Young's arrest for possession of a firearm by a previously convicted felon. This federal prosecution arises from a prior arrest on a similar state charge that occured in New Orleans, Louisiana on July 24, 2010; state prosecution of the state case ended after the state court granted a defense motion to suppress

1

key evidence (Rec. Doc. No. 31).[1] On March 3, 2011, Defendant was charged by way of federal indictment with one count of being a convicted felon in possession of a firearm in violation of Title 18, United States Code, § 922(g)(1) and 924(a)(2).

On July 24, 2010, at approximately 3:20 p.m., New Orleans Police Department (NOPD) officers Christopher Durning and Brandon Callais observed a white two-door Acura car, traveling on St. Bernard and North Claiborne Avenues. Based on their observations and experience, the car appeared to have excessive window tinting. (Rec. Doc. No. 31 at 2). The officers decided to conduct a traffic stop for violation of local laws relative to excessive window tinting.

After the vehicle was pulled over, Durning approached the passenger side of the white Acura. The occupants of the Acura rolled down the windows and Durning testified he smelled a strong odor of marijuana coming from inside the vehicle. Durning's partner Officer Callais testified that he did not smell any odor of marijuana as he simultaneously approached the driver's side of the car. The car contained two individuals - the driver, later identified as the named Defendant, and a front seat passenger, later identified as Sean Young. Both occupants were ordered out

---

[1] On February 4, 2011, Judge Arthur Hunter, Jr. of the New Orleans Parish Criminal District Court ruled to suppress the statements and evidence found pursuant to the vehicle search at issue. (Rec. Doc. No. 23-2 at 69). Basically, Judge Hunter did not find Officer Durning's testimony to be credible.

the car and taken to it's rear by Callais. At that point, Durning placed his head into the car and testified he observed what appeared to be seeds and stems of marijuana lying on the car's floorboard. Durning advised both Defendant and the passenger of their rights per *Miranda*.

While Durning was searching the car, Callais discovered that the driver, Defendant, had a suspended driver's license. Callais then *Mirandized* Defendant for driving with a suspended license and placed him in the rear of the police unit. After Defendant was *Mirandized*, Durning asked him who the marijuana in the vehicle belonged to. Defendant replied that his girlfriend had been smoking marijuana in the car earlier that day.

After Defendant's arrest, and while now conducting a more thorough search of the car, Durning noticed that the passenger's side dashboard, where the air bag compartment in the dashboard would be, was protruding - *i.e.*, it was not flush with the rest of the dashboard. Based on his law enforcement experience of compartments and places individuals typically use to hide contraband, Durning lifted the plate of the dashboard (where it was not flush) and discovered a fully loaded Glock, Model 22, .40 caliber handgun resting in the air bag compartment space, absent the air bag.

An NCIC check determined that the handgun had been reported stolen. The passenger, Sean Young, told officers that Defendant

had just picked him up in the vehicle to get a pair of shoes and that he had no knowledge that a handgun was in the vehicle. Officers also noted that the vehicle was in Defendant's name. Defendant was *Mirandized* and arrested for being a convicted felon in possession of a stolen firearm. The passenger, Sean Young, was also detained and under investigation for possessing a stolen firearm. Sean Young was also placed inside the back of the police unit with Defendant. About an hour after the initial stop of the car, a K-9 unit arrived on the scene but failed to detect the presence of any illegal substance, i.e. marijuana, after inspecting the Defendant's car's exterior and interior areas.

Durning conducted a test of the vehicle's window tint using a "tint meter." Under LA-RS 32:361, the state requirement is that at least 40% light transmission permeate the windows of the vehicle. Durning's test measured only 12% light transmission - well below the statutory requirement.[2]

As a firearm had been discovered in the vehicle, the officers called NOPD Det. Chad Perez, the First District detective assigned to the Project Safe Neighborhood initiative, out to the scene. Det. Perez had the interior microphone and video camera system in the police unit activated. Det. Perez again *Mirandized* both Defendant and Sean Young. At that point, both individuals denied

---

[2] Defendant argues that nothing in the record substantiates this claim. (Rec. Doc. No. 23-1 at 7).

any knowledge of the firearm. Defendant told Det. Perez that the vehicle was his and that he had just purchased it only a couple of days earlier. When Det. Perez asked Defendant how he was able to get a hard, permanent Louisiana license plate so quickly for the vehicle, Defendant was unable to provide a viable answer. Det. Perez concluded the interview at that point, stepped away from the vehicle, but kept the interior audio/video system on. Both individuals were then transported to the First District Police Station.

While at the police station, Det. Perez reviewed the audio/video recording of Defendant and Sean Young while they were in the back of the police unit. Det. Perez heard Sean Young express no knowledge of the gun being in the car and then, shortly thereafter, Defendant asked Sean Young to take the gun charge for him.

Det. Perez then conducted separate interviews with, first, Sean Young and then, Defendant. Initially, Sean Young told Det. Perez that the gun was his. When Det. Perez questioned Sean Young about where he got the gun from and where he hid it, Sean Young was unable to answer those questions. Shortly thereafter, Sean Young recanted his earlier statements that the gun was his and he admitted that Defendant had tried to talk him into taking the gun charge for him. Det. Perez then interviewed Defendant who stated that he did not know who the gun belonged to and that it must

belong to Sean Young. Defendant denied that he asked Sean Young to take the charge for him. Also, the address Defendant gave Det. Perez as his home address was actually the address of a boarded-up abandoned house. When informed of this, Defendant then maintained that he lived other places, as well.

Contentions of Defendant:

Defendant contends that, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) and *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) *cert denied*, 546 U.S. 1222 (2006),[3] his stop was not justified at its inception. (Rec. Doc. No. 23-1 at 7). Defendant argues that Durning claims that he and his partner stopped Defendant's vehicle because they thought the windows were illegally tinted, but Defendant submits that there is nothing in the record to substantiate this allegation. Defendant also argues assuming, *arguendo*, that the traffic stop was justified, the vehicle search following his arrest was not "reasonably related in scope to the circumstances of the stop."

First, Defendant contends that the vehicle search cannot be justified under the "automobile exception" to the Fourth Amendment

---

[3] An investigative vehicle stop is proper only if "the officer's action was:(1)justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) *cert denied*, 546 U.S. 1222 (2006) (quotation marks and citations omitted).

because Durning did not have probable cause to search the vehicle. Defendant asserts that Durning's statement in the police report that as he approached the passenger side window of the vehicle, he "immediately recognized the strong odor of marijuana coming from inside the vehicle," is not credible. Further, Defendant maintains there was nothing in his car to indicate that marijuana had been recently smoked such that there was a strong odor emanating from the car. Additionally, Defendant notes that the alleged amount of marijuana stems and seeds found by Durning was in such a small amount that they could not be collected.

Second, Defendant contends that, pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009), the warrantless vehicle search cannot be justified as a valid search incident to a lawful arrest. (Rec. Doc. No. 23-1 at 10). Defendant submits that at the time of the search, he had already been removed from the vehicle, placed under arrest and put in the back of the police car. Thus, he was no longer within reaching distance of the vehicle's passenger compartment, there was no further legitimate concern about officers' safety, and there was no danger that Defendant could destroy any evidence. Further, Defendant notes that there was no reasonable basis for Durning to believe that any evidence relevant to the crime could be recovered from his car. According to Defendant, he was arrested for

7

a traffic violation-driving without a driver's license.[4]  Given this, Defendant petitions this Court to suppress the gun recovered from his car and all the fruits of the allegedly illegal search.

Contentions of the Government:

In response, the Government claims that, per the first prong of the *Terry* inquiry, the initial traffic stop was justified because Durning had reasonable suspicion that a traffic violation had occurred. (Rec. Doc. No. 31 at 6).  The Government notes that during daylight hours, Durning observed excessive tint on the windows of Defendant's vehicle.  The Government further asserts that the second prong of *Terry* was satisfied because after properly stopping Defendant for the excessive tint, Durning approached the vehicle and smelled marijuana.  As such, the smell of marijuana gave rise to the officers having probable cause and, thus, Durning had a duty to search the vehicle for contraband.  The Government submits that the Fifth Circuit has held that "the odor of marijuana alone provides probable cause for a warrantless search of a vehicle."  *United States v. Moore*, 329 F.3d 399, 405 (5th Cir.

---

[4] The Government notes that once the officers smelled marijuana emanating from the vehicle and saw marijuana seeds and stems, Defendant was *Mirandized* for this violation. (Rec. Doc. No. 31 at 8).  Therefore, the initial traffic stop expanded to an arrest for marijuana and the subsequent vehicle search of the air bag compartment was relevant to the arrest.

2003). In support of this, the Government notes, contrary to Defendant's claim that there was nothing to indicate that marijuana had been recently smoked inside his vehicle, Defendant, himself, admitted to Durning that his girlfriend had smoked marijuana earlier that day in his vehicle. (Rec. Doc. No. 31 at 8; Rec. Doc. No. 23-1 at 3).[5]

Finally, the Government contends that probable cause existed to search the entire vehicle because a "vehicle search conducted pursuant to probable cause may include any item and compartment in the car that might contain the object of the search." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). The Government submits that Defendant's vehicle smelled like marijuana and the officers observed marijuana seeds and stems. (Rec. Doc. No. 31 at 9). Thus, the Government asserts there was probable cause to effectuate a search across the entire vehicle, including where the air bag compartment was supposed to be located.

The Government also addresses the discrepancies in the officers' testimony, which the Court noted during its August 10, 2011 hearing. When Durning allegedly smelled marijuana, he was standing on the passenger side of Defendant's car, directly alongside the front of the passenger side window. (Rec. Doc. No.

---

[5] As basic Fourth Amendment law, the facts establishing probable cause to conduct a search must come to the attention of law enforcement <u>before</u> the search is conducted, not afterwards.

55). The Government submits that the passenger side window was rolled entirely down as Durning stood beside it. In contrast, the Government contends that Callais was standing on the driver's side of the vehicle, closest to the backseat window, and the frontseat window was only partially rolled down, about two to three inches. Finally, the Government submits that the K-9 was not in the same position as Durning when he allegedly smelled marijuana. The K-9 did not arrive on the scene until one hour after the traffic stop, when the vehicle doors were open. Therefore, the Government petitions denial of the motion to suppress. (Rec. Doc. No. 23).

## Law and Analysis

### A. Motion to Suppress Claims Related to Traffic Stops

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19-20.

In *Lopez-Moreno*, pursuant to *Terry*, the Fifth Circuit held that under the two-pronged *Terry* inquiry, a traffic stop was valid if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference in the first place. *Lopez-Moreno*, 420 F.3d at 430.

Here, the traffic stop was justified from its inception because Defendant's vehicle reasonably appeared to contain excessive window tint. It was difficult or impossible to see the interior of the car through the tinted windows. Furthermore, after making the legitimate stop, the officers' actions were reasonably related to the circumstances that justified the stop. As the officers were approaching the car, Durning smelled marijuana as he came alongside the front passenger window. Contrary to that evidence, Durning's partner did not detect any marijuana odor. Durning admittedly did not seize any marijuana, stems or seeds, as evidence; nor did his partner observe any seizure or evidence of marijuana, stems or seeds. The K-9 subsequently called to the scene did not detect the presence of contraband, marijuana or otherwise. An officer of Durning's experience should have displayed reasonable and far better judgment by either seizing the evidence of illegal contraband that he claims to have observed in plain view or, at least, show same to other officers on the scene that day to corroborate his claims. The facts of this case present

a very close call at this stage. While Durning's credibility on key issues noted above is weakened by his own inattention to detail, there is reasonable explanation from the record evidence for what he observed and others didn't. Initially, he was closest to and in a better position, physically and temporally, to detect odors from within the car than his partner and the K-9. For instance, the record evidence suggests Durning was standing immediately next to the passenger side window, which was rolled entirely down, while Callais was standing near the backseat window on the driver's side with the frontseat window only partially rolled down a few inches.

In *U.S. v. Kerr*, 48 Fed. Appx. 103, 2002 WL 31036486 (5th Cir. 2002), both officers approached a defendant's vehicle pursuant to a traffic stop, and they recovered a firearm after a search. During the suppression hearing, the officers gave conflicting testimony as to whether they smelled marijuana coming from the vehicle. The Fifth Circuit held that "[t]he fact that one officer testified that he smelled marijuana and the other officer testified that he did not can be explained by the testimony that established that the officer who testified that he smelled marijuana was standing closer to the car." *Id*.[6] This case is similar with the

---

[6] The Government also relies upon *United States v. Hadley*, 257 Fed. Appx. 755, 2007 WL 4304907 (5th Cir. 2007) and *United States v. Casteneda*, 951 F.2d 44 (5th Cir. 1992).

instant matter. It has also been recognized that when a police officer smells "marijuana as they approach[] [a] vehicle, they [have] probable cause to search the vehicle." *Moore*, 329 F.3d at 405. Here, Durning stated he smelled marijuana as he stood next to the passenger side window, which was rolled entirely down. *See United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989).

Despite the absence of direct corroboration of an odor of marijuana pre-search and seizure, Durning had probable cause to believe the car's occupants possessed marijuana based on his own subjective belief that he smelled such an odor coming from the passenger side of the car as he approached that area. He thusly had probable cause to search the vehicle to look for contraband related to the cause of the odor. "If probable cause justified the search of the lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

Accordingly, defendant's motion to suppress evidence is denied without prejudice. Importantly, we reserve the opportunity to reconsider our legal findings here in light of all evidence presented at trial on the merits.

New Orleans, Louisiana, this 18th day of October, 2011.

13

_____
UNITED STATES DISTRICT JUDGE